UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HUNT CONSTRUCTION GROUP, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:04-cv-2126-JDT-TAB |
| ) | |
| ) | |
| ALLIANZ GLOBAL RISKS U.S. ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. No. 90)**[1]

This matter comes before the court on Defendant's motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Hunt Construction Group, Inc. ("Hunt") was a general contractor on a project in Memphis, Tennessee, to construct a library for the City of Memphis ("Memphis"). Defendant Allianz Global Risks U.S. Insurance Company ("Allianz") issued a builder's risk insurance policy to Hunt covering the risk of physical damage to construction during the project. On November 6, 2000, rain damaged construction, and Hunt filed a claim with Allianz for roughly $3.4 million. Allianz agreed to pay almost $400,000 on the claim but refused to pay the rest. Hunt now sues for the remainder in federal court, pursuant to the court's diversity jurisdiction. Allianz asks for summary judgment on two of Hunt's

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

insurance claims. First is Hunt's claim to be reimbursed for the amount that Memphis charged Hunt for the city's direct costs related to the delayed completion of construction. Second is Hunt's claim to be reimbursed for insurance premiums paid to Allianz to extend the builder's risk policy due to delayed completion of construction.

I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn therefrom, in the light reasonably most favorable to the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). In this case, the court must view the facts in a light most favorable to Plaintiff.

The moving party "bears the initial responsibility" of identifying specific facts within the record that "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When a motion for summary judgment is made and properly supported, the non-moving party may not rest on the pleadings or denials but must set forth the specific evidence showing there is a genuine issue of material fact that

requires a trial. Fed. R. Civ. P. 56(e). A mere scintilla of evidence will not do. *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir.2001) (citing *Anderson*, 477 U.S. at 252). It is with this standard in mind that the court sets forth the following facts for summary judgment.

**II.   FACTS FOR SUMMARY JUDGMENT**

The parties agree on most of the material facts. In late 1998, Hunt contracted with Memphis to act as general contractor on a project to construct a library there. Hunt was to be substantially complete by August 20, 2000,[2] and could be charged liquidated damages of $5000 per day for every calendar day beyond August 20 before substantial completion. Hunt was also required to get builder's risk insurance, which it obtained from Defendant Allianz.

The insurance contract with Allianz is at the center of the matter before the court. The insurance contract covered "all risks of physical loss of or damage to Property insured." (Def.'s Ex. 2, at AGR00008.) Specifically excluded were "consequential loss of any nature howsoever caused including penalties for non-completion of contract . . . . [and] costs incurred solely in an effort to eliminate or reduce liquidated damages or other penalty clauses for which the Insured may be contractually liable." (Def.'s Ex. 2, at AGR00009.)

---

[2] Or more precisely, it was to be complete within 609 calendar days following the notice to proceed, which was issued around December 22, 1998.

On November 6, 2000, severe rain struck the project causing delays and pushing back the expected completion date. Before this weather-induced setback, the project was already behind the original schedule. In August of 1999 and July of 2000, Hunt requested and received two change orders to push the date of substantial completion back to October 1, 2000, and then to December 15, 2000. Also before the rain event, Hunt sought to extend its coverage with Allianz (set to expire October 22, 2000) to March 1, 2001.

After the November rains, and the December completion date had passed, Cheryl Swift, a representative of Memphis, met with Hunt and agreed to another change order. (Def.'s Ex. 16.) After December 15, 2000, Memphis had the right to charge Hunt $5000 a day in liquidated damages for each day the project was not substantially complete. Instead, this order extended the date of completion to April 1, 2001, and reduced the contract amount by $351,166 ($4,083.33 per day) to compensate Memphis for its direct costs of supervising the project for the extended period of time. Hunt calls these "owner cost impacts" and seeks to recover this amount from Allianz; Allianz calls them "liquidated damages" and has refused to pay.

Despite assuring Memphis that it would be done on April 1, 2001, Hunt did not complete the project until October 1, 2001. Hunt was assessed liquidated damages of $5000 per day from April 2, 2001 until the end of September. Hunt does not seek reimbursement for these liquidated damages. Hunt was required to get additional builder's risk insurance to cover the period it worked past March 1, 2001. Hunt argues

that it should be reimbursed for the insurance premiums it paid to Allianz after the November 6 rain event. Allianz disagrees.

## III. DISCUSSION

Defendant argues that under the terms of the insurance contract, it is not liable for the "owner cost impacts," which Defendant claims are a thinly disguised substitute for liquidated damages, or for the additional insurance premiums Plaintiff had to pay due to delay in completion. Both claims require the court to analyze the insurance contract between Hunt and Allianz.

Under Tennessee law, courts review insurance policies under contract principles. *Ralph v. Pipkin*, 183 S.W.3d 362, 367 (Tenn. Ct. App. 2005).[3] Unambiguous terms are enforced as written. *Certain Underwriter's at Lloyd's of London v. Transcarriers Inc.*, 107 S.W.3d 496, 499 (Tenn. Ct. App. 2002). To determine whether a risk is covered, a court must look to the entire policy, construing ambiguous terms against the insurer, in an effort to uncover the intent of the parties. *Memphis Furniture Mfg. Co. v. Am. Cas. Co.*, 480 S.W.2d 531, 532-33 (Tenn. 1972). The court will not "rewrite an insurance policy simply because [the court does] not favor its terms." *Quitana v. Tenn. Farmers Mut. Ins. Co.*, 774 S.W.2d 630, 632 (Tenn. Ct. App. 1989). Exceptions, exclusions and limitations in insurance contracts are construed against the insurer. *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991). They "should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their

---

[3] The parties agree that Tennessee law applies.

intended purpose." *Standard Fire. Ins. Co. v. Chester O'Donley & Assocs., Inc.*, 972 S.W.2d 1, 8 (Tenn. Ct. App. 1998).

### A.   Owner Cost Impacts

The insurance contract with Allianz specifically excludes any payments for liquidated damages or "costs incurred solely in an effort to eliminate or reduce liquidated damages." (Def.'s Ex. 2, at AGR00009.)  Allianz argues that the "owner cost impacts" were nothing more than liquidated damages by another name.  When Hunt missed the December 15, 2000, deadline for completion, Memphis was entitled to charge Hunt $5000 per day.  In fact, Memphis was inclined to do so but agreed instead to charge Hunt an amount roughly equal to the city's expected direct costs for extending construction to April 1, 2001.  This can only be considered a payment to avoid liquidated damages, which is excluded by the insurance contract.  Hunt disagrees and points out that Hunt or Memphis nowhere described this payment as liquidated damages or a penalty.  This was a cost that arose from the project's delayed completion.

Yet, there is so much evidence that this was a payment in lieu of liquidated damages that no reasonable trier of fact could find that this was covered loss.  Both sides cite the deposition of Cheryl Swift, but that deposition makes clear that despite her reluctance to call the Owner Cost Impacts a penalty, this is merely a semantic difference.  Pursuant to Hunt's contract with the city, as amended, Memphis had the right to start assessing liquidated damages after December 15.  (Swift Dep. 122.)

Memphis instead deducted its direct costs for the time period after December 15 from Hunt's contract amount.

Swift admitted in her deposition this was done in lieu of charging Hunt the entire amount of liquidated damages. She was asked: "[T]he city decided instead of charging [Hunt] $5,000 day, you would only charge Hunt your actual costs incurred to stay on the project?" To which she responded, "Yes." (*Id.*) She continued:

> We met with Hunt and asked, When are you going to finish the project? We have these costs that have to be paid. Now, when are you going to finish? And we could assess you the $5,000 a day liquidated damages. We're willing not to do that, but you'll have to pay the costs that it will take until you finish.

(*Id.* at 123.) These costs were to pay the city's architect and construction manager, which were the city's responsibility to pay, not Hunt's. (*Id.* at 124.) The character of the "Owner Cost Impacts" was clear, it was a payment made by Hunt to Memphis in order to avoid liquidated damages.

Hunt's arguments that these are anything but a penalty for late completion are unavailing. Hunt first argues that the court should look to the plain language of Change Order 3, which was the agreement between Hunt and Memphis to extend the substantial completion date and lower the contract amount. The Change Order does not explicitly mention liquidated damages or a penalty. It states:

> In response to the Contractor's time extension request on December 8, 2000, the contract time is extended by one hundred seven (107) calendar days. The new substantial completion date is April 1, 2001. This change

>order represents the contract reduction costs from December 16, 200 through April 1, 2001 of $351,166.00.

(Def.'s Ex. 16.)

Hunt argues that this Change Order unambiguously amended the date of substantial completion to April 1, 2001, which means that "the contract reduction could not have been a liquidated damage penalty because it represents costs that precede the date upon which the Owner had the contractual right to assess liquidated damages." (Pl.'s Br. 16.) According to Hunt, "extrinsic evidence," like Swift's deposition should not be used to interpret the contract.

Hunt seems to be arguing that, under the parol evidence rule, the interpretation of the insurance contract must be controlled by the construction contract and cannot be influenced by "extrinsic evidence" such as Swift's deposition. This is a misapplication of the rule. The parol evidence rule prohibits the admission of extrinsic evidence to explain the meaning of a contract when the parties have reduced their agreement to an integrated writing. *See Newark Ins. Co. v. Seyfart*, 392 S.W.2d 336, 348 (Tenn. Ct. App. 1965). But it only applies to the parties to the contract itself, not to third parties who might be affected by a characterization in that contract. *Wyatt v. Lassiter*, 299 S.W.2d 229, 237 (Tenn. Ct. App. 1957); *Swift v. Beaty*, 282 S.W.2d 655, 658 (Tenn. Ct. App. 1955). Hunt and Memphis cannot bilaterally characterize a transaction in a manner that negatively affects the rights of Allianz.

Hunt further argues that even if the Swift deposition is taken into account, the deposition demonstrates that there is a genuine issue of material fact as to whether the "Owner Cost Impacts" are a penalty for late completion or not. Swift adamantly refused to characterize the contract change as liquidated damages or a penalty several times in her deposition. She was asked: "But this was a liquidated damage, it was just called something differently, is that what you're saying?" To which she responded: "No, this was not liquidated damages." (Swift Dep. 119-20.) In another exchange:

> Q. However, let me—however, the city did charge them as a—they did charge them what came out to—what you were saying $4,000 and change a day correct?
> 
> A. Yes.
> 
> Q. For the city's costs for going over the substantial completion date; is that correct?
> 
> A. No. We charged them that because we—for our fees that we had to pay to keep the construction manager and the architect on the site to do the job, that was our direct cost.

(*Id.* at 120-21.) During Hunt's questioning at her deposition, Swift characterized Change Order 3 as a "contract extension." (*Id.* at 168.) Swift specifically denied that Change Order 3 imposed liquidated damages. (*Id.*) Swift was also asked: "And [Change Order 3] wasn't entered into solely in an effort to eliminate or reduce liquidated damages, correct?" She replied, "Correct." (*Id.* at 169.)

Whatever Swift's characterization and whatever Hunt and Memphis thought about what they were doing, the substance of the transaction remains the same: Memphis could have asked for liquidated damages, but choose instead to seek

reimbursement for the city's direct costs. This plainly fall within the exclusion in the policy for "costs incurred solely in an effort to eliminate or reduce liquidated damages . . . ." (Def.'s Ex. 2, at AGR00009.) Despite her reluctance to call the direct costs charged to Hunt "liquidated damages, nowhere in her deposition does Swift cast doubt that this was a payment to avoid liquidated damages.

Hunt also tries to characterize the owner impact costs as necessary to the completion of the project. In particular, they claim that the Construction Manager and Architect were involved in the reconstruction and thus were "used in or incidental to" the reconstruction. (Def.'s Ex. 2, at AGR00008.) But this is not really the point. Certainly Memphis incurred some cost because the project completion was delayed, and perhaps some of these costs were necessary to the reconstruction. That is one of the very reasons there was a liquidated damages provision (which Allianz never agreed to cover). The point is that before Memphis agreed to the contract extension they were costs for which Memphis was responsible and after the contract extension they were costs that for which Hunt was responsible. It is impossible to view them as anything other than costs incurred to avoid liquidated damages.

### B. Insurance Premiums

Hunt also asks for the return of insurance premiums paid to Allianz to extend its coverage as a result of the rain damage. Insurance premiums fall into a category of costs called "soft costs." *See* 4 Bruner & O'Connor, Construction Law § 11:116 [hereinafter "Construction Law"]; *cf. Terra-Adi Int'l Dadeland, LLC v. Zurich Am. Ins.*

*Co.*, No. 06-22380-CIV-HUCK/SIMONTON, 2007 WL 675971, at *6 (S.D. Fla. Mar. 1, 2007). Soft costs include "interest expense, loan fees, property taxes, design fees, insurance premiums, legal and accounting costs and additional commissions arising from the renegotiation of leases." Construction Law § 11:116. Normally, coverage for soft costs must be added by an endorsement to the builder's risk insurance contract. *Id.*; *see also Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, No. 04-1490, 2007 WL 913874, at *3 (D.N.J. March 22, 2007) (delay in completion endorsement which included soft costs and additional expenses); *Terra-Adi*, 2007 WL 675971 at *6 (same).

The insurance contract itself is unambiguous in not covering soft costs. It does not contain an endorsement adding coverage for soft costs. The perils insured were "against all risks of physical loss of or damage to Property Insured." (Def.'s Ex. 2, at AGR00008.) The policy also contains a valuation clause which states: "Claims shall be settled under this policy on the basis of the actual cost of repair and/or replacement." (*Id.* at AGR00015.)

Hunt argues that insurance premiums were a necessary cost to conduct the repairs because of its contract with Memphis, which required builder's risk insurance at all times. It claims that insurance premiums are included in the coverage by virtue of the language in the property insured section which states that the contract "covers all 'supplies of any nature whatsoever . . . used in or incidental to the site . . . reconstruction and/or repair.'" (Pl.'s Br. 20 (quoting Def.'s Ex. 2, at AGR00008).)

But to consider insurance premiums a "supply" (even a supply of any nature whatsoever) runs contrary to the definition of supply in this context. First of all, a supply is normally a store of a commodity that can be used. "Supplies" according to Webster's Dictionary are "materials or provisions stored and dispensed when needed." Webster's II New College Dictionary 1108 (1999). Second, the context in which supply is being used is to describe what property is insured[4] and that property is insured only against "physical loss [] or damage." (Def.'s Ex. 2, at AGR00008.) Insurance premiums are not subject to physical loss or damage.

Plaintiff also argues that the insurance premiums were necessary for the completion of the repairs and therefore they should be reimbursed for their cost. However, this is not enough to charge soft costs to Defendant, who never agreed to take on more than the direct cost of repair. *Cf. Essex House v. St. Paul Fire & Marine Ins. Co.*, 404 F. Supp. 978, 994 (S.D. Ohio 1975) (cost to remove and store furniture of tenants during repair not within builder's risk policy coverage). Plaintiff alternatively frames this argument: "But for the damage caused on November 6, 2000, Hunt would not have had to extend its Policy on three separate occasions and incur the additional

---

[4] The complete passage is in the "property insured, at site" section and reads:

> All materials, equipment and machinery, labor and supplies of any nature whatsoever, including buildings and temporary structures, the property of the Insured, or of others for which the Insured may have assumed responsibility, to be used in or incidental to the site preparations, erection and/or fabrication and/or reconstruction and/or repair of the project insured, described in Item 3 of the Declarations, commencing when the property becomes at the Insured's risk at the site, and while awaiting, during and subsequent to erection and/or fabrication and/or repair and/or testing.

(Def.'s Ex. 2, at AGR00008.)

costs of insurance premiums." (Pl.'s Br. 20.) Again, this does not necessarily mean that it is covered by the builder's risk policy. *See Shamrock Homebuilders, Inc. v. Cherokee Ins. Co.*, 486 S.W.2d 548, 554 (Tenn. Ct. App. 1972) (when damages for builder's risk policy limited to direct physical loss or damage to property coverage does not include damages assessed against builder in negligence action resulting from covered peril). For these reasons, the additional insurance premiums are a soft cost not covered by the policy, and Defendant is not liable for them.[5]

### IV.     CONCLUSION

For these reasons, Defendant's motion for partial summary judgment is **GRANTED**.

ALL OF WHICH IS ENTERED this 7th day of August 2007.

_____
John Daniel Tinder, Judge
United States District Court

---

[5] In its brief, Plaintiff argues that the consequential damages exclusion does not apply to the insurance premiums because it is an incidental loss rather than a consequential loss. Having decided that the insurance premiums are not a covered loss, the court need not decide if the exclusion applies.

Copies to:

Magistrate Judge Tim A. Baker

Bryce H. Bennett Jr.
RILEY BENNETT & EGLOFF LLP
bbennett@rbelaw.com

Grover Burton Davis
MCCLURE MCCLURE DAVIS & HENN
gbdavis@mmdhlaw.com

David Titus Dekker
THELEN REID & PRIEST
ddekker@thelenreid.com

Richard J. Dick
MITCHELL HURST JACOBS & DICK, LLP
rdick@mhjd.com

David E. Heiss
FISHER KANARIS P.C.
dheiss@fisherkanaris.com

Peter Emanuel Kanaris
FISHER KANARIS PC
pkanaris@fisherkanaris.com

Stephen David Palley
THELEN REID & PRIEST LLP
spalley@thelenreid.com

Jefferson D. Patten
FISHER KANARIS P.C.
jpatten@fisherkanaris.com

Jose M. Pienknagura
THE HUNT CORPORATION
jmpienknagura@thehuntcorp.com

Murray D. Sacks
THELEN REID & PRIEST LLP
spalley@thelenreid.com